UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOANNA HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:13-CV-206-TAV-HBG |
| ) | |
| LIBERTY INSURANCE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

This civil matter is before the Court on defendant Liberty Insurance Corporation's Motion to Dismiss [Doc. 3], in which defendant seeks dismissal of plaintiff Joanna Hall's claims related to the homeowner's insurance policy plaintiff holds with defendant. Plaintiff submitted a response [Doc. 6], and, pursuant to Rule 15 of the Federal Rules of Civil Procedure, also filed an amended complaint [Doc. 7], after which defendant submitted a reply [Doc. 8]. Defendant also filed a supplemental brief pursuant to E.D. Tenn. L.R. 7.1(d) [Doc. 9], to which plaintiff submitted a response [Doc. 10]. For the reasons discussed herein, defendant's motion [Doc. 3] will be granted in part and denied in part.

I.     **Background**

This dispute arises from several incidents involving the homeowner's insurance policy plaintiff holds with defendant. In early 2011, plaintiff returned from vacation to her residence in Knoxville, Tennessee and discovered that a portion of her home had

been flooded from a failed water-filter housing unit, causing significant damage to the home [Doc. 7 ¶ 6]. Plaintiff contacted defendant, her insurance provider, and submitted a claim for the damage under her policy [*Id.* ¶ 7]. After processing the claim, defendant hired Landmark Corporation ("Landmark") as the general contractor for the repairs to plaintiff's home [*Id.*]. Landmark subsequently subcontracted the removal of items from plaintiff's home to East Tennessee Moving Company, LLC, doing business as Two Men and a Truck Knoxville, Chattanooga/Atlanta ("Two Men"), so that Landmark could carry out the repairs [*Id.* ¶ 9]. On June 2, 2011, however, while at plaintiff's home, several of Two Men's employees removed a locked safe from a bedroom closet, which contained numerous pieces of jewelry, and also removed several power tools [*Id.* ¶ 10]. The employees subsequently admitted to police that they stole the items, which were later sold or discarded [Doc. 7 ¶ 12]. As a result of the theft, plaintiff filed a second insurance claim with defendant, valuing the loss at $25,000 [*Id.* ¶ 14].

Plaintiff also alleges that in April 2011, defendant came to her home to conduct an inspection of her roof after a hailstorm, but no claim was ever made for roof damage, and no repairs were ever made to the roof [*Id.*]. In February 2012, plaintiff learned that defendant had counted the inspection as a third claim on her insurance policy in a twelve-month period, which prompted defendant to increase plaintiff's rates for her renewed policy in 2012 [*Id.*]. Plaintiff, feeling that she had been deemed uninsurable, continued her coverage with defendant under the renewed policy and paid the increased rate [*Id.*].

2

As a result of the theft, plaintiff initiated a lawsuit in October 2011 against Landmark, Two Men, and the two employees who entered her home in Knox County Circuit Court [Doc. 9-1]. Plaintiff later settled her claims against all of these parties, and the Knox County action was dismissed [Doc. 9-2].

Plaintiff then filed the present action in Knox County Circuit Court in March 2013, which defendant subsequently removed to this Court [Doc. 1]. In her amended complaint [Doc. 7], plaintiff asserts claims for vicarious liability, breach of fiduciary duty, and breach of contract arising from both the theft and the increase in her homeowner's insurance policy rates.

## II. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss for failure to state a claim pursuant to Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not

3

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will an "unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

**III. Analysis**

Defendant moves for dismissal of plaintiff's claims, arguing that plaintiff has failed to set forth allegations giving rise to a claim upon which relief could be granted. Plaintiff argues that, through her amended complaint [Doc. 7], she has stated claims which are sufficient to overcome defendant's Rule 12 motion. In reply, defendant argues that the amended complaint does not cure the deficiencies set forth in the motion to dismiss.

    **A.    Vicarious Liability**

In her complaint, plaintiff seeks to hold defendant liable for the theft of her personal property on a theory of respondeat superior, alleging that the two men who stole her property were acting as agents of defendant at the time they were in plaintiff's home,

4

and were acting within the scope of their employment so as to render defendant responsible for its agents' actions. Defendant argues in its motion that plaintiff cannot state a claim for relief because she has not adequately alleged that the movers were agents of defendant or acting within the scope of their employment, given their criminal actions. Defendant also argues that the principle of res judicata prohibits plaintiff from bringing a claim against defendant for the actions of Two Men's employees.

### 1. Respondeat Superior

The doctrine of respondeat superior serves to make an employer liable for the torts committed by its employee when that employee was acting within the scope of his employment. *Russell v. City of Memphis*, 106 S.W.3d 655, 657 (Tenn. Ct. App. 2002). "To hold a principal liable for the acts of another, a plaintiff must prove: (1) that the person causing the injury was the principal's agent[;] and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005). "Whether the conduct of an employee was within the scope of his employment is fact-intensive." *Hughes v. Met. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 366 (Tenn. 2011); *see, e.g. Tucker*, 180 S.W.3d at 120 ("Determining whether a principal-agent relationship exists requires a careful analysis of the facts."). While generally the issue of scope of employment is a question of fact, it may become a question of law "when the facts are undisputed and no conflicting inferences are possible." *Thurmon v. Sellers*, 62 S.W.3d 145, 152 (Tenn. Ct. App. 2001). In

determining whether an agents' acts were within the scope of law, Tennessee courts seek guidance from the Restatement (Second of Agency), which sets forth numerous factors to be considered in undertaking this analysis including: the time, place and purpose of the act; the previous relations between the principal and agent; whether or not the principal has reason to expect such an act will be done; the extent of the departure from the normal method of accomplishing an authorized result; and whether or not the act is seriously criminal, among others. *Hughes*, 340 S.W.3d at 364 (citing Restatement (Second) of Agency § 228).[1]

At this time, the Court cannot conclude whether the movers who took plaintiff's personal property were not acting as agents of defendant at the time they were in her home, or whether they were acting outside the scope of their employment, so as to warrant dismissal of plaintiff's claim. While defendant argues that the criminal acts of Two Men's employees show that they were acting outside the scope of their employment, this fact is not determinative of the Court's conclusion as to whether defendant is vicariously liable; rather, it is one of several factors developed by Tennessee courts in undertaking a fact-intensive analysis, an analysis that is inappropriate in determining the sufficiency of a complaint in the context of a motion to dismiss. In looking at the face of the complaint, plaintiff alleged that a principal-agency relationship existed between

---

[1] Tennessee courts similarly employ a factors-based analysis in determining whether an agency relationship exists. *See Goodale v. Langenburg*, 243 S.W.3d 575, 582-83 (Tenn. Ct. App. June 2007) (listing factors including: (1) right to control work; (2) right of termination; (3) method of payment; (4) whether or not the worker furnishes his own helpers; (5) whether or not worker furnishes own tools; (6) scheduling of work hours; and (7) freedom to render services to other entities).

defendant and Two Men's agents, and that their actions occurred within the scope of that agency relationship. The Court finds that these allegations state a claim upon which relief may be granted, given that detailed factual allegations are not required under the Federal Rules of Civil Procedure. While defendant may successfully argue that no such relationship existed, or that the individuals were acting outside the scope of their agency relationship, such arguments would be more appropriately raised in the context of a motion for a summary judgment.

### 2. Res Judicata

In a separately filed supplement to its reply brief [Doc. 9], defendant alternatively moves for dismissal of this claim under the principle of res judicata based upon the voluntary dismissal of plaintiff's Knox County suit against Landmark, Two Men, and Two Men's employees. Specifically, defendant contends that it was in privity with the parties to plaintiff's state action and that the action was decided on the merits, so that plaintiff's vicarious liability claim is now barred. In support of this argument defendant submitted a copy of the orders dismissing plaintiff's state case [Doc. 9-2]. Defendant also argues that, because defendant's agents have been released from liability, plaintiff cannot now seek to hold defendant liable for the agents' conduct. Plaintiff, in response, argues that res judicata does not apply to any of her claims.

"Federal courts sitting in diversity must afford state-court judgments the same preclusive effect that they would have under the law of the state in which they were rendered." *Calaway v. Schucker*, 395 F. App'x 251, 254 (6th Cir. 2010). Under

7

Tennessee law, the traditional doctrine of res judicata is a "claim preclusion doctrine that promotes finality in litigation," *id.* (quotation omitted), and bars "'a second suit between the same parties or privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit,'" *id.* (quoting *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009)). A party asserting res judicata must show that the following elements have been met: (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was final and on the merits; (3) the same parties or their privies were involved in both proceedings; and (4) both proceedings involved the same cause of action. *Id.* (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)).

"[A] voluntary dismissal by consent of the parties may bar reassertion of a claim, but only to the extent that the parties intended the dismissal to resolve the merits of the claim and establish res judicata." *Id.* at 255 (citing *Garrett v. Corry Foam Prods.*, 596 S.W.2d. 808, 810-11 (Tenn. 1980)). Under Tennessee law, then, not all voluntary dismissals have preclusive effect, but it is the intent of the parties that drives the application of res judicata:

> The extent to which a judgment of decree entered by consent is conclusive in a subsequent action should be governed by the intention of the parties as expressed in the agreement which is the basis of the judgment and gathered from all the circumstances, rather than by a mechanical application of the general rules governing the scope of estoppel by judgment.

*Calaway*, 395 F. App'x at 255 (quoting *Long v. Kirby-Smith*, 292 S.W.2d 216, 220 (Tenn. Ct. App. 1956)). In *Calaway*, the Sixth Circuit reviewed the district court's

application of res judicata in a second suit based on language dismissing a defendant from the initial lawsuit, which indicated that the defendant was "dismissed with prejudice." *Id.* at 252. The court held that the looking to the order of dismissal alone was insufficient to show that the parties intended the dismissal to have preclusive effect, so that the district court improperly concluded the dismissal was on the merits and improperly applied res judicata. *Id.* at 255.

In this case, defendant has similarly not presented sufficient evidence indicating that plaintiff intended the settlement agreement to have preclusive effect, so as to show that the prior case was determined on the merits, warranting the application of res judicata. The language of the dismissal orders filed by the judge in the state court case state as follows:

> the matters herein in controversy as between the Plaintiff Joanna Hall and all Defendants have been resolved by way of separate agreements, the terms of which call for all claims of Joanna Hall against all Defendants to be dismissed in their entirety and with full prejudice to the rebringing of same.

[Doc. 9-2]. Although the orders use the language "with full prejudice," as the *Calaway* court noted, Tennessee courts have found that such statements are insufficient to give a dismissal claim-preclusive effect, and should generally be disregarded as "'surplusage.'" 395 F. App'x at 254 (quoting *Garrett*, 596 S.W.2d at 809-10. Moreover, like the dismissal order at issue in *Calaway*, the dismissal orders here does not outline the terms of any settlement agreement, so that there is no indication that plaintiff intended to resolve her claims against the previous defendants on the merits. *See id.* at 255 (noting

9

that without knowing the contents of the settlement agreement at release at issue, it was "impossible to determine if that agreement expressed an intent to resolve" plaintiff's claims on the merits).  While defendant cites to *Gerber v. Holcomb*, 219 S.W.3d 914 (Tenn. Ct. App. 2006) in support of the idea that a voluntary dismissal serves as a judgment on the merits, the dismissal order in that case expressly outlined and incorporated the terms of the settlement between the parties, which provided evidence of the parties' intent that the dismissal would have preclusive effect, so that the holding from *Gerber* is inapposite here.  *See Calaway*, 395 F. App'x at 256-57 (distinguishing the dismissal order at issue there from the dismissal order at issue in *Gerber* and noting that if *Gerber* applied to the dismissal order at issue in *Calaway*, it would conflict with previously established Tennessee case law).  Thus, the Court concludes that defendant cannot show that plaintiff's action is prohibited on res judicata grounds at this stage of the action.

Defendant separately argues that plaintiff's action is barred by the common law rule that a settlement with an agent precludes an action against a principal.  As the Court has previously discussed, however, the Court cannot make a determination whether the defendants in the state court action were acting as agents of the defendant during the time period in question, so that dismissal of plaintiff's vicarious liability claim would be inappropriate.  Thus, defendant's motion will be denied with respect to plaintiff's vicarious liability claim.

10

## B. Breach of Fiduciary Duty

Defendant also moves for dismissal of plaintiff's breach of fiduciary duty claim, arguing that plaintiff has failed to state a claim for which this Court could grant relief. Specifically, defendant argues that under Tennessee law, and under the facts as alleged by plaintiff in both her original and amended complaints, defendant owed no fiduciary duty to plaintiff. Plaintiff responds that, since defendant contracted with Landmark to undertake repairs, defendant had a duty to supervise the contractors and agents and ensure the repairs were completed without damage to plaintiff's property.

Under Tennessee law, "[f]iduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence." *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005) (citing *Oak Ridge Precision Indus., Inc v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)). "A fiduciary duty is the duty to act primarily for another's benefit." *Id.* Generally, parties dealing at arm's length "lack the sort of relationship of trust and confidence that gives rise to a fiduciary relationship." *Dick Broadcasting Co., Inc. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 674 (Tenn. 2013). In the context of insurance contracts, the Tennessee Supreme Court has noted that "no fiduciary relationship exists between an insurer and its insured when the company is settling a claim directly with its insured," *MFA Mut. Ins. Co. v. Flint*, 574 S.W.2d 718, 720 (Tenn. 1978), although the court also noted that insurance contracts contain an implied covenant of good faith and fair dealing, *id. See also Heil Co. v. Evanston Ins. Co.*, No. 1:05-CV-

284, 2009 U.S. Dist. LEXIS 17760, *7 (E.D. Tenn. Mar. 6, 2009) (finding no fiduciary duty between insurer and insured arising from contract provision permitting insurer to defend insured); *Bagsby v. Shelter Gen. Ins. Co.*, No. 87-153-II, 1988 Tenn. LEXIS 95, *8 (Tenn. Ct. App. Feb. 10, 1988) (citing to *Flint* and noting that there is no fiduciary relationship between insurer and its insured).

In this case, plaintiff's Amended Complaint alleges that the defendant owed a duty to supervise the contractors hired to repair her house as "a result of the insurer-insured relationship" [Doc. 7]. Plaintiff cites to no provision of the contract giving rise to this duty, but argues in response to defendant's motion that by undertaking repairs, pursuant to plaintiff's insurance policy, defendant took on a fiduciary role because it was acting on plaintiff's behalf. The Court disagrees. The transaction which created the policy at issue here was an arms' length, business transaction, and plaintiff has not alleged that defendant's motivation in undertaking the repairs to plaintiff's property was anything other than its contractual obligation created by the policy. Plaintiff has not pled any special circumstances that would indicate the existence of a confidential, fiduciary relationship, nor alleged any additional facts from which the court could reach such a conclusion. *See Thompson*, 404 F. Supp. 2d at 1029 (dismissing breach of fiduciary duty claim where plaintiff failed to show "that she established a confidential relationship with [d]efendant whereby [d]efendant was bound to act primarily for her benefit"). Given the absence of a fiduciary relationship, plaintiff's breach of fiduciary duty claim is hereby dismissed.

### C. Breach of Contract

Plaintiff's breach of contract claim stems from defendant's act of charging plaintiff higher insurance rates based upon its calculation of three claims filed on plaintiff's homeowner's insurance policy in a twelve-month period. In support of its motion to dismiss, defendant argues that plaintiff's contract claim fails to state a claim for which relief could be granted because plaintiff does not allege a provision of the first policy that has been breached nor established that there has been a breach under the renewed policy in which plaintiff was subject to higher rates. Plaintiff argues in response that her amended action states a claim for a breach of the covenant of good faith implied in every insurance contract.

To establish a claim for breach of contract under Tennessee law, a plaintiff must show the following: (1) the existence of a contract; (2) nonperformance amounting to a breach of that contract; and (2) damages caused by the breach of the contract. *Thompson*, 404 F. Supp. 2d at 1028 (citing *Life Care Ctrs. of America, Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996)). In *Flint*, the court noted that "[i]nsurance polices are contracts of the utmost good faith and must be administered and performed as such by the insurer." *Flint*, 574 S.W.2d at 720 (citation omitted). "In all insurance contracts, particularly where the language expressing the extent of the coverage may be deceptive to the ordinary layman, there is an implied covenant of good faith and fair dealing that the insurer will not do anything to injure the right of its policyholder to receive the benefits of his contract." *Id.*; *see, e.g. Austin Co. v. Royal Ins. Co.*, 842

13

S.W.2d 608, 610 (Tenn. Ct. App. 1992) ("A duty of good faith and fair dealing in performance and enforcement is implied in all contracts.").

In this case, plaintiff alleges that in April 2011, she permitted defendant to conduct an inspection of the roof at her home following a hailstorm. Plaintiff ultimately did not make a claim for roof damage and no repairs were ever made. Defendant, plaintiff alleges, counted this inspection as a third claim which triggered an increase in her insurance rates for the following year. This action of falsely assessing a third claim under the policy is the basis for plaintiff's allegation that defendant breached the covenant of good faith and fair dealing. Defendant argues that plaintiff has not pointed to a specific provision of the insurance contract that has been breached, but does not argue that the implied obligation of good faith does not apply in this case. Defendant also argues that plaintiff cannot assert a breach of contract claim while she is still insured under the policy which she claims was breached, but the Court finds such arguments do not overcome, at this juncture of the proceedings, to plaintiff's allegations that defendant violated the implied covenant of good faith and fair dealing in the policy by erroneously charging plaintiff higher rates. Accordingly, the Court concludes that plaintiff has sufficiently set forth a claim for relief, and defendant's motion as to this claim will be denied.

Case 3:13-cv-00206-TAV-HBG   Document 15   Filed 12/13/13   Page 14 of 15   PageID #: 134

## IV. Conclusion

For the reasons stated, defendant's Motion to Dismiss [Doc. 3] will be **GRANTED in part** and **DENIED in part** to the extent discussed herein.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE